**#25-3096**

# IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

|  |  |  |
|---|---|---|
| | ) | |
| AIMEE ALBRECHT, | ) | |
| | ) | Appeal from the United States District Court |
| Petitioner-Appellant, | ) | for the Central District of Illinois |
| | ) | |
| v. | ) | |
| | ) | |
| SHERIFF OF ROCK ISLAND COUNTY | ) | |
| ILLINOIS | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

## <u>RESPONDENT-APPELLEE'S BRIEF</u>

Submitted for Respondent-Appellee: Sheriff of Rock Island County Illinois

By:    Austin R. Carlson
        Assistant State's Attorney
        Office of the State's Attorney in and for Rock Island County, Illinois
        1317 3rd Avenue, 2nd Floor
        Rock Island, IL 61201
        Phone: (309) 558-3219

# CONTENTS:

Table of Authorities ................................................................................................ i

Jurisdiction Statement ............................................................................................1

Issues Presented for Review ..................................................................................3

Statement of the Case.............................................................................................4

Summary of the Argument......................................................................................6

Argument ................................................................................................................8

      *1. The district court lacked subject matter jurisdiction to hear this case* ...........8

      *2. There was no "structural error" in the judicial assignment process* ...........16

      *3. This court should decline to issue Petitioner a certificate of appealability* .................18

Statement Regarding Oral Argument...................................................................19

Addendum of Statutes Cited ...............................................................................19

Certificate of Service ...........................................................................................36

# AUTHORITIES:

*Cases:*

*Ambriz v. Montgomery*, No. SACV 14-0297, 2015 WL 7769219 (C.D. Cal. Oct. 26, 2015) .......11

*Brown v. Johnston*, No. 22-cv-670-DWD, 2022 WL 1129327 (S.D. Ill. Apr. 15, 2022)..............11

*Canfield v. Butte County Superior Court*, No. CIV S-07-1640 LKK GGH P, 2007 WL

      4554225 (E.D. Cal. Dec. 20, 2007)......................................................................11

*Carter v. United States*, 733 F.2d 735 (10th Cir. 1984)................................................11

*Drexler v. Spahn*, No. 21-cv-00805-LTB-GPC, 2021 WL 12360835 (D. Colo. Aug. 27,

      2021) ..............................................................................................................11

*Edwards v. Illinois Bd. of Admissions to Bar*, 261 F.3d 723 (7th Cir. 2001) ................................12

*Estate of Alvarez v. Donaldson Co.*, 213 F.3d 993 (7th Cir. 2000) ...................................................8

*Harris v. Nelson*, 394 U.S. 286 (1969) ..................................................................................14, 15

*Hensley v. Municipal Court*, 411 U.S. 345 (1973) ...........................................................9, 13, 14, 15

*Holmes v. Satterberg*, 508 Fed. Appx. 660 (9th Cir. 2013) ..................................................................11

*Ibrahim v. New Jersey*, No. 21-7407 (SRC), 2021 WL 1660853 (D.N.J. Apr. 28, 2021).............11

*Jones v. Cunningham*, 371 U.S. 236 (1963) ..................................................................................13

*Lane v. Structural Iron Workers Local No. 1 Pension Trust Fund*, 74 F.4th 445 (7th Cir.

2023) .....................................................................................................................................16

*Maleng v. Cook*, 490 U.S. 488 (1989) ..................................................................................1, 8, 9, 15

*Nowakowski v. New York*, 835 F.3d 210 (2d Cir. 2016)....................................................................11

*Palmore v. United States*, 411 U.S. 389 (1973)...............................................................................8

*Stanbridge v. Scott*, 791 F.3d 715 (7th Cir. 2015) ..................................................................9, 15

*Triestman v. Schneiderman*, 715 Fed. Appx. 97 (2d Cir. 2018) ........................................................11

*Troxel v. Granville*, 530 U.S. 57 (2000) ..................................................................................15

*Tyler v. Heavican*, No. 8:12CV363, 2013 WL 1337624, at *1-*2 (D. Neb. Apr. 1, 2013)...........11

*United States v. Corrick*, 298 U.S. 435 (1936) ..................................................................1, 16

*United States v. Diekemper*, 604 F.3d 345 (7th Cir. 2010)............................................................16

*United States v. Williams*, 949 F.3d 1056 (7th Cir. 2020)...............................................................17

*Vega v. Schneiderman*, 861 F.3d 72 (2d Cir. 2017)....................................................................10, 11

*Young v. United States*, 481 U.S. 787 (1987) ..................................................................................12

*Statutes:*

28 U.S.C. § 455 (2026) ........................................................................................................16

28 U.S.C. § 1291 (2026) ........................................................................................................1

28 U.S.C. § 1331 (2026) .....................................................................................................1, 8

28 U.S.C. § 2253 (2026) ......................................................................................................18

28 U.S.C. § 2254 (2026) ................................................................................1, 2, 8, 10, 15

750 ILCS 60/102 (2026) ........................................................................................................9

750 ILCS 60/214 (2026) ........................................................................................................9


*Other Authorities:*

Circuit Rule 28 of the United States Court of Appeals for the Seventh Circuit (2024) ..................2

Federal Rule of Appellate Procedure 22 (2024) ...............................................................18

Federal Rule of Appellate Procedure 28 (2024) .................................................................2

Federal Rule of Appellate Procedure 30 (2024) .................................................................4

Federal Rule of Appellate Procedure 31 (2024) ...............................................................18

Rule 4 of the Rules Governing Section 2254 Cases in the United States District

    Courts (2019) ..................................................................................................................4

U.S. Const. art. III, § 1 ..........................................................................................................8

**JURISDICTION:**

Petitioner's jurisdictional statement is both incorrect and incomplete.

The district court did not have jurisdiction to resolve this case. 28 U.S.C. § 1331 grants the district courts "original jurisdiction of all civil actions arising under the … laws … of the United States." Petitioner sought a writ of habeas corpus for relief from state custody under the corresponding provisions of the United States Code, 28 U.S.C. § 2254. 28 U.S.C. § 2254(a) requires that the person for whom the writ is sought be "in custody" at the time of the petition's filing for the federal courts to exercise jurisdiction over such a suit. *See also Maleng v. Cook*, 490 U.S. 488, 490-91 (1989). Petitioner was not in custody at the time she filed the present suit. She was subjected to two adverse state court orders—(1) a civil "order of protection" under Illinois law and (2) an order deeming her in contempt of that "order of protection," imposing a carceral sentence for her contempt, and staying that sentence absent future violations of the original "order of protection." Neither of these orders extended the custodial authority of the state over Petitioner. Petitioner has not been arrested or detained by Respondent, or otherwise placed under Respondent's supervision in any way. As such, she is not "in custody" and the district court lacked jurisdiction to hear her suit.

28 U.S.C. § 1291 grants this court jurisdiction to resolve "appeals from all final decisions of the district courts of the United States … ." However, when an appeal is taken of a case where a trial court lacks jurisdiction, the appellate courts "have jurisdiction on appeal, not of the merits, but merely for the purpose of correcting the error of the lower court in entertaining the suit." *United States v. Corrick*, 298 U.S. 435, 440 (1936). In this case, the lower court lacked jurisdiction for the reasons stated above. As such, this court possesses only limited jurisdiction to consider whether the trial court correctly concluded that it lacked jurisdiction over the cause. Petitioner did not

1

indicate in her jurisdictional statement the specific facts required by Circuit Rule 28(a)(2) to be included in an appellant's statement of jurisdiction. Though Respondent declines to speculate which judgment or order Petitioner specifically wishes to appeal, Respondent believes it has included all Circuit Rule 28(a)(2) material in the dates provided below pursuant to Federal Rule of Appellate Procedure 28(a)(4)(c) and 28(b).

Petitioner filed the present application on September 18, 2025. The district court entered its original order dismissing this matter for want of jurisdiction on October 16, 2025. Petitioner filed a motion to alter or amend the judgment of dismissal on November 3, 2025. The district court denied Petitioner's motion to alter or amend the judgment of dismissal on November 13, 2025. Petitioner filed a notice of appeal in the district court on November 20, 2025. The docketing statement was due by November 28, 2025. The transcript information sheet was due by December 4, 2025. Petitioner filed her docketing statement and transcript information sheet on December 2, 2025.

This appeal is from a final order that disposed of all claims before the district court.

**ISSUES PRESENTED:**

I.  Whether the district court correctly concluded that Petitioner was not "in custody" within the meaning of 28 U.S.C. § 2254(a) at the time she filed the present case, and therefore was correct to dismiss this case for want of jurisdiction.

**STATEMENT OF THE CASE:**[1]

Petitioner Aimee Albrecht sought a writ of habeas corpus from the United States District Court for the Central District of Illinois for relief from State custody directed to Respondent Rock Island County Sheriff's Office.[2] She sought such a writ because, in State-level civil litigation which did not involve the Sheriff, she was found by the State court judge to be in contempt of court.[3] Pursuant to that contempt finding, the Court entered an order of a custodial sentence, but "stayed" the sentence—declaring that it would be imposed only if Albrecht contemptuously violated the Court's orders again.[4] The Sheriff has not taken any actions against Albrecht, has not asserted any authority over her, and—to the Sheriff's knowledge—Albrecht has not served a day of incarceration or been subjected to any form of supervisory check-in as a result of this order.[5]

Contrary to the ordinary rules of procedure for habeas cases, Albrecht served a summons on the Sheriff before the Court had an opportunity to review her petition.[6] Rather than risk a default due to Albrecht's improper service of summons, the Sheriff appeared and filed a motion to dismiss.[7] This motion asserted the court lacked jurisdiction because Albrecht did not meet the "in custody" requirement of the habeas statute.[8]

The district court found that, because Albrecht was subjected to a mere civil order of protection and the State court had not ordered Albrecht to be incarcerated or placed under

---

[1] Petitioner produced her brief and appendix thereto before the record on appeal was filed and without consulting Respondent, as required by Federal Rule of Appellate Procedure 30. Nonetheless, Respondent has found sufficient material in the appendix filed by Petitioner to support the citations necessary for its own Statement of the Case.

[2] Pet. App'x 24.

[3] Pet. App'x 15-16.

[4] *Id.*

[5] *Id.*

[6] Pet. App'x 24; *see also* Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (2019).

[7] Pet. App'x 25.

[8] Pet. App'x 4-5.

supervision due to her contemptuous violation of that order, Albrecht was not "in custody" within the meaning of the federal habeas statute and so the court lacked jurisdiction over the case.[9] Pursuant to this finding, the district court dismissed the case.[10] In their dismissal order, the district court also refused to grant Albrecht a certificate of appealability.[11] Albrecht filed a motion to reconsider, which the district court promptly denied.[12]

Albrecht filed a notice of appeal challenging the district court's jurisdictional finding.[13] Albrecht has neither moved for nor been granted a certificate of appealability from this court.

---

[9] Pet. App'x 5-7.
[10] Pet. App'x 8.
[11] Pet. App'x 7.
[12] Pet. App'x 10-13.
[13] Pet. App'x 26.

**SUMMARY OF THE ARGUMENT:**

This court should affirm the trial court's order dismissing this case for two reasons. First, as the district court correctly concluded, Petitioner was not in custody at the time she filed the present action. Accordingly, the court lacked subject matter jurisdiction to review her request. While Petitioner was subjected to multiple adverse orders by the State trial court, none of them place her under the custodial authority of the State of Illinois so as to expose the orders to habeas review in the federal courts. The original order was an "order of protection" which required Petitioner to refrain from contacting a particular protected person and from harassing other litigation participants. The second order was an order finding Petitioner in contempt of court for violating the original order of protection and imposing a sentence of incarceration, but staying that sentence so long as Petitioner honored the court's prior orders. Neither of these orders placed Petitioner under the custody of the State of Illinois generally or the Rock Island County Sheriff specifically. The first is a mere civil injunction; and the second is, in substance, a warning of the consequences of future violations.

Second, federal law requires a habeas petitioner who is unsuccessful at the trial court level to secure a certificate of appealability before this court will entertain their appeal. The district court declined to afford Petitioner such a certificate. Though this court has the authority to extend such a certificate of its own accord, Petitioner has not moved in this court for its issuance and, in any case, no reasonable jurist could conclude on the facts of this case that Petitioner has a reasonable argument that she is in custody. Therefore this court should deny Petitioner a certificate of appealability and dismiss this appeal under the rules applicable to such certificates.

Additionally, Petitioner's alternative argument concerning the judicial assignment procedures used in this case ought to be rejected because of the aforementioned jurisdictional

6

issues, Petitioner's failure to preserve this argument for appeal, Petitioner's failure to establish that the judicial assignment procedures employed were wrongful, and—even if all of these reasons were insufficient—the fact that any wrongful reassignment which occurred amounted to harmless error.

**ARGUMENT:**

*1.       The district court lacked subject matter jurisdiction to hear this case*

Petitioner contends that the district court was incorrect when it dismissed her filing for want of subject matter jurisdiction. The district court found it lacked jurisdiction after determining she is not "in custody" pursuant to the state court orders entered against her within the meaning of 28 U.S.C. § 2254(a). This court reviews dismissal of a case for want of subject matter jurisdiction de novo.[14]

Article III, § 1 of the United States Constitution vests the judicial power of the United States "in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."[15] Because Congress is granted discretion in the creation of any courts outside the Supreme Court, any courts Congress does create exercise jurisdiction only to the extent Congress has vested that court with jurisdiction.[16] In creating the federal district courts, Congress has vested them generally with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[17] However, Congress has created a carve-out from this general grant of jurisdiction in cases seeking a writ of habeas corpus for relief from a state court judgment. 28 U.S.C. § 2254(a) requires the person for whom the writ is sought to be "in custody" at the time the petition is filed before any court "shall entertain" the petition.[18] The "in custody" requirement imposed by this statute is a specific limitation on the federal courts' jurisdiction over petitions for habeas relief by state prisoners.[19]

"The custody requirement of the habeas corpus statute is designed to preserve the writ of

---

[14] *Estate of Alvarez v. Donaldson Co.*, 213 F.3d 993, 994 (7th Cir. 2000).
[15] U.S. Const. art. III, § 1.
[16] *Palmore v. United States*, 411 U.S. 389, 400-01 (1973).
[17] 28 U.S.C. § 1331.
[18] 28 U.S.C. § 2254(a).
[19] *See Maleng v. Cook*, 490 U.S. 488, 490-91 (1989).

habeas corpus as a remedy for severe restraints on individual liberty."[20] The "in custody" requirement must be met at the time the petition is filed.[21] "[A] petitioner is not 'in custody' pursuant to a particular conviction unless his physical liberty of movement is limited in a non-negligible way, and that limitation is a *direct* consequence of the challenged conviction."[22] As is readily apparent, Petitioner is not in custody.

Petitioner has been subjected to two adverse state court orders that she claims to seek relief from. The first is a plenary civil order of protection.[23] An "order of protection" under Illinois law is a statutory civil injunction imposed in accordance with the Illinois Domestic Violence Act of 1986.[24] These orders can impose a variety of restrictions on a person subjected to them, but, for the most part, can be succinctly summarized as "stay away" orders.[25] The primary remedy imposed under an "order of protection" in Illinois is the separation of a victim from their abuser.[26]

The second order Petitioner complains of is an order finding Petitioner in contempt of court for violations of this order of protection.[27] This order did three things: (1) it found Petitioner in contempt of court for violating the court's order of protection; (2) it imposed a 13-week sentence of incarceration against Petitioner for her contempt of court; and (3) it stayed that sentence of incarceration so long as two conditions were met—(a) Petitioner complied with the order of protection's terms, and (b) Petitioner "refrain[ed] from making any false and/or derogatory statements, filing any false criminal or civil charges against [the opposing party], any of the attorneys of record, the Court, the judges, or engaging in any other harassing, threatening and/or

---

[20] *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973).
[21] *Maleng*, 490 U.S. at 490-91.
[22] *Stanbridge v. Scott*, 791 F.3d 715, 719 (7th Cir. 2015) (emphasis in original).
[23] Pet. App'x 20.
[24] *See* 750 ILCS 60/214.
[25] *Id.*
[26] *Id.*; *see also* 750 ILCS 60/102(6).
[27] Pet. App'x 17-18.

abusive conduct toward any of these parties."[28] Neither of these orders places Petitioner under the custodial authority of the State of Illinois, and so she is not "in custody" within the meaning of the habeas statute.

While the application of 28 U.S.C. § 2254(a)'s "in custody" requirement to civil injunctions like the order of protection entered against Petitioner appears to be an issue of first impression in this Court, other courts have considered similar orders entered under similar statutes and—as best as Respondent can tell—unanimously found that the people subjected to those orders were not "in custody." The most directly on-point evaluation of this issue is the Second Circuit's discussion in *Vega v. Schneiderman*.[29] In *Vega*, the petitioner was accused in a New York state court of criminal contempt and harassment after they violated a similar "stay away" order of protection.[30] "Vega was convicted on both charges and was sentenced to a one-year conditional discharge, with the condition that she abide by a two-year order of protection."[31] The Second Circuit, finding that the petitioner in that case did not meet the "in custody" requirement of the habeas statute, reasoned:

> Vega's sentence does not rise to the same level of restraint as did the sentence in *Nowakowski*. First, Vega concedes that, unlike in *Nowakowski*, her sentence never required her physical presence at a particular time or location. Nor was she affirmatively required to do anything such as perform community service. Although she contends that this is a "distinction without a difference," … we disagree. The only restraint on Vega's freedom was that she stay away from Camacho. This narrow and pinpointed restriction is neither severe nor significant. … In any event, the restriction is far less intrusive than the restrictions imposed on *Nowakowski* which required him to be in a particular place at a particular time and perform a specific act under the threat of further penal sanction. … By contrast, Vega can go anywhere at any time and do anything she wants as long as she avoids an intentional confrontation with Camacho. We view this "restriction" as modest, not severe.
> Moreover, the order of protection did not expose Vega to future adverse

---

[28] Pet. App'x 17.
[29] *Vega v. Schneiderman*, 861 F.3d 72, 75-76 (2d Cir. 2017).
[30] *Id.* at 73.
[31] *Id.*

consequences at the discretion of a supervising court as did the order in *Nowakowski*. Although Vega faced the possibility of some new charge and future sanction if she were to violate the order of protection, we are not convinced that the entirely speculative possibility of a future charge for a future violation is sufficiently severe to place Vega "in custody" for purposes of the habeas statute. If this were enough, every state order of protection could become the subject of federal habeas litigation.[32]

*Vega* is virtually indistinguishable from the present case, and the Second Circuit's reasoning is persuasive.

Additionally, Respondent has searched and been unable to find *any* case which suggests a contrary result should occur in this case. Meanwhile, every case which has evaluated the issue comes to the same conclusion: a civil injunction, though it places some form of constraint on a person's liberty, does not impose a significant enough constraint to declare that a person is "in custody" within the meaning of the habeas statute.[33]

The existence of the contempt order does not alter this straightforward conclusion for one simple reason: the state trial court stayed the sentence imposed.[34] The conditions of that stay

---

[32] *Id.* at 75. The *Nowakowski* case repeatedly referenced in the block quote is *Nowakowski v. New York*, 835 F.3d 210 (2d Cir. 2016), where the Second Circuit found that a sentence to one day of community service which the defendant was required to serve on a particular date was sufficient to find the petitioner was in custody under the habeas statute. *Id.* at 217. *Nowakowski* is not analogous to the present case, because the Petitioner here has no affirmative obligations requiring her attendance at a particular place and time.

[33] *See, e.g.*, *Triestman v. Schneiderman*, 715 Fed. Appx. 97, 98 (2d Cir. 2018) (habeas challenge to New York order of protection); *Holmes v. Satterberg*, 508 Fed. Appx. 660, 660-61 (9th Cir. 2013) (habeas challenge to Washington no-contact order); *Carter v. United States*, 733 F.2d 735, 736 (10th Cir. 1984) (habeas challenge to injunction imposing restraints on a person's right to file lawsuits); *Brown v. Johnston*, No. 22-cv-670-DWD, 2022 WL 1129327, at *2-*3 (S.D. Ill. Apr. 15, 2022) (habeas challenge to military order of protection); *Drexler v. Spahn*, No. 21-cv-00805-LTB-GPC, 2021 WL 12360835, at *3-*4 (D. Colo. Aug. 27, 2021) (habeas challenge to civil order of protection); *Ibrahim v. New Jersey*, No. 21-7407 (SRC), 2021 WL 1660853, at *1 (D.N.J. Apr. 28, 2021) (habeas challenge to criminal court pre-trial no-contact order); *Ambriz v. Montgomery*, No. SACV 14-0297, 2015 WL 7769219, at *3 (C.D. Cal. Oct. 26, 2015) (habeas challenge to sex offender no-contact order); *Tyler v. Heavican*, No. 8:12CV363, 2013 WL 1337624, at *1-*2 (D. Neb. Apr. 1, 2013) (habeas challenge to injunction prohibiting the unauthorized practice of law); *Canfield v. Butte County Superior Court*, No. CIV S-07-1640 LKK GGH P, 2007 WL 4554225, at *1 (E.D. Cal. Dec. 20, 2007) (habeas challenge to TRO).

[34] Pet. App'x 15.

amounted to only a mild expansion of the terms of the original order of protection—requiring Petitioner to additionally refrain from harassing or filing baseless litigation against the protected party or the attorneys or judges in the case.[35] For all of Petitioner's bluster about "incarceration-backed sanctions," the contempt order is really just a warning. Further violations will result in the imposition of a carceral sentence. That is all the order says of any significance. The state trial court said it best: "Aimee holds the key to whether or not she will serve this jail sentence."[36] Given that a contempt order and sentence of incarceration can follow *any* willful violation of *any* court order, finding that the orders Petitioner seeks habeas review of placed her "in custody" would open the doors of the federal courts to review every state court judgment issued in every case—fundamentally undermining the finality of state court civil litigation and making a mockery of the *Rooker-Feldman* doctrine.[37]

Petitioner's argument to the contrary is unavailing. Petitioner admits the sentence imposed by the contempt order was stayed. The fact that the underlying order of protection has been extended more-or-less indefinitely has no bearing on the strictness of the restrictions on her liberty interests imposed by that order—it speaks only to the length of time those restrictions will remain in place. The fact that a sentence has been imposed is not independently sufficient to find that she is in custody because, once again, that sentence has been stayed—and will remain stayed unless Petitioner commits another contempt. Most of Petitioner's argument is empty bluster about how she feels wronged by the state court orders—and most of this bluster is directed at how the state

---

[35] *Id.*

[36] *Id.*

[37] *See Young v. United States*, 481 U.S. 787, 795 (1987) (quoting *Michaelson v. United States*, 266 U.S. 42, 45 (1924)) ("That the power to punish for contempts is inherent in all courts, has been many times decided and may be regarded as settled law. It is essential to the administration of justice."); *see also Edwards v. Illinois Bd. of Admissions to Bar*, 261 F.3d 723, 728 (7th Cir. 2001) (The *Rooker-Feldman* doctrine "provides that lower federal courts do not have subject matter jurisdiction to review state court civil decisions.").

court orders were imposed. None of this changes what the persuasive authorities Respondent identified and the district court relied on provide. Petitioner has not been subjected to the custodial authority of the state of Illinois; she is merely constrained by a civil injunction.

Nor is this conclusion altered by the authorities cited by Petitioner. Petitioner points to "*Jones v. Cunningham*," "*Hensley v. Municipal Court*," and "*Harris v. Nelson*" without providing any citation to those cases. Because Petitioner did not provide any citation, Respondent can only guess at the cases Petitioner intended to rely on. Respondent suspects Petitioner first intended to cite *Jones v. Cunningham*, 371 U.S. 236 (1963). *Jones* is not analogous to the present case. There the petitioner was serving a custodial sentence, but he was granted parole.[38] The conditions of parole were then—as they are now—incredibly restrictive. The parolee in *Jones* was required to live at a particular place selected by the parole board and prohibited from leaving the community, changing his place of residence, or purchasing a motor vehicle without prior consent from his parole officer.[39] The parolee was required to check in with his parole officer monthly, and was subject to random checks of his home and place of employment by that parole officer.[40] The Supreme Court found that these conditions were sufficiently similar to actual incarceration such that a parolee facing those conditions was "in custody" within the meaning of the habeas statute.[41] Petitioner is not similarly situated. She is free to do whatever she wants and go wherever she wants—except for contacting a particular protected person.

As for *Hensley v. Municipal Court*, Respondent presumes Petitioner meant to refer to the 1973 Supreme Court case of the same name.[42] In *Hensley*, the petitioner was subjected to an

---

[38] *Jones v. Cunningham*, 371 U.S. 236, 237 (1963).
[39] *Id.*
[40] *Id.*
[41] *Id.* at 242-43.
[42] *Hensley*, 411 U.S. 345.

imminently-pending custodial sentence which had only been stayed for the duration of his post-conviction relief and habeas cases.[43] The petitioner was only permitted to remain at-large so long as his litigation seeking relief from that sentence remained pending.[44] Further, the petitioner was required to appear whenever the state court demanded him to, and was subject to incarceration if he failed to do so.[45] From these restraints, the Supreme Court found the petitioner was "in custody" within the meaning of the habeas statute.[46] Once again, Petitioner in the present case is not similarly situated. Though she, too, is subject to a stayed custodial sentence, the conditions of that stay are not such that they will automatically and inevitably lift. The stay on Petitioner's sentence will only lift upon the finding of another contempt—a condition which is far too speculative to find imminent and which is entirely within Petitioner's control. What's more, even the Supreme Court which handed down *Hensley* seemed to think they had reached the outer limits of what "in custody" meant. They were careful to admonish the profession:

> Finally, we emphasize that our decision does not open the doors of the district courts to the habeas corpus petitions of all persons released on bail or on their own recognizance. We are concerned here with a petitioner who has been convicted in state court and who has apparently exhausted all available state court opportunities to have that conviction set aside. Where a state defendant is released on bail or on his own recognizance pending trial or pending appeal, he must still contend with the requirements of the exhaustion doctrine if he seeks habeas corpus relief in the federal courts. Nothing in today's opinion alters the application of that doctrine to such a defendant.[47]

*Hensley* is clearly inapplicable here.

For *Harris v. Nelson*, Respondent assumes Petitioner intended to cite the 1969 Supreme Court case of that name.[48] This case is entirely inapplicable to the present issue, concerning itself

---

[43] *Id.* at 351-52.
[44] *Id.*
[45] *Id.* at 351.
[46] *Id.* at 352-53.
[47] *Id.* at 353.
[48] *Harris v. Nelson*, 394 U.S. 286 (1969).

entirely with the question of whether and how the court in a habeas case should approach discovery and evidentiary hearings, after determining that the ordinary rules of civil procedure did not apply to such issues.[49]

Finally, Petitioner actually provides a citation to her last case: *Troxel v. Granville*, 530 U.S. 57 (2000). Petitioner's reliance on *Troxel*—a substantive due process case concerning grandparent visitation statutes—is likewise unavailing, as the case has nothing to say about the writ of habeas corpus.[50]

Respondent agrees with Petitioner insofar as she asserts the "in custody" requirement imposed by 28 U.S.C. § 2254(a) cannot be read inflexibly. The cases stand for as much.[51] But Petitioner fails to take the next step of asking what, substantially, the "in custody" requirement means. The cases have required a substantial physical constraint on the petitioner's liberty.[52] "[C]ollateral consequences"—up to and including "[a petitioner's] inability to vote, engage in certain businesses, hold public office, or serve as a juror" resulting from a criminal conviction— do not qualify.[53] A simple "stay away" order prohibiting harassment, and a warning that future violations of said order will result in incarceration, do not raise to the threshold which warrants invoking the great writ. This court should find that the district court properly determined it lacked jurisdiction to hear this case and so the ordered dismissal was appropriate.

---

[49] *See generally id.*

[50] *See generally Troxel v. Granville*, 530 U.S. 57 (2000) (a word-processing search of this case for the word "habeas" returned zero results).

[51] *Hensley*, 411 U.S. at 349-50 ("Our recent decisions have reasoned from the premise that habeas corpus is not 'a static, narrow, formalistic remedy,' … but one which must retain the 'ability to cut through barriers of form and procedural mazes.'").

[52] *Stanbridge*, 791 F.3d at 719.

[53] *Maleng*, 490 U.S. at 491-92.

## 2. *There was no "structural error" in the judicial assignment process*

Petitioner next complains that the district judge below was appointed to preside over this matter by the Chief Judge of the Central District of Illinois after that judge recused herself from this matter. Petitioner asserts this was "structural error" mandating vacatur and reassignment to a different district judge. Petitioner appears to assert a violation of 28 U.S.C. § 455(b). If such a claim is "properly preserved," this court reviews such issues de novo.[54] "'It is less clear under our case law whether we may review a refusal to recuse under section 455(b) when the argument is raised for the first time on appeal,' but assuming that we can, that review will be for clear error."[55] There are several issues with Petitioner's argument on this point.

First, this court lacks jurisdiction to decide this issue. As noted in Respondent's jurisdictional statement *supra*, this court possesses only limited to jurisdiction to evaluate whether the district court's jurisdictional decision was correct.[56] Accordingly, this court may not entertain Petitioner's arguments on non-jurisdictional issues.

Second, this ground for relief was neither asserted in nor addressed by the district court. Accordingly, Petitioner has forfeited this argument and cannot raise it in this court. The record below discloses that the only motion for recusal and reassignment Petitioner made was the one requesting recusal of the Chief Judge.[57] After the Chief Judge granted that motion and reassigned the case, there was no suggestion by Petitioner that she objected to the assigned judge presiding over the matter.[58] "It is a cardinal rule of appellate practice that we ignore arguments not presented below."[59] Therefore, Petitioner has waived any objection to the judicial reassignment practice

---

[54] *United States v. Diekemper*, 604 F.3d 345, 351 (7th Cir. 2010).
[55] *Id.*
[56] *Corrick*, 298 U.S. at 440.
[57] Pet. App'x 24-26.
[58] *Id.*
[59] *Lane v. Structural Iron Workers Local No. 1 Pension Trust Fund*, 74 F.4th 445, 450-51 (7th Cir. 2023).

employed by the district court.

Third, it bears noting that Petitioner merely complains that the judicial reassignment process appeared to be unfair. All relevant issues concerning the jurisdiction of the federal courts to resolve this case have been presented for de novo review in this court, and there is no suggestion by Petitioner that the judge who actually presided over this matter below was biased. Thus, any error in the judicial reassignment process employed by the district court is necessarily harmless— there was no clear error requiring vacatur in Judge Hawley's failure to recuse himself *sua sponte* under these circumstances. Accordingly, this court should pass on the merits of the question even if the court has jurisdiction to entertain it and it has not been forfeited.[60]

Finally, even if all of these procedural points are rejected, Petitioner has failed to prove that the judicial reassignment process employed by the district court was biased or unfair so as to require Judge Hawley's recusal. Petitioner has only pointed out that Chief Judge Darrow entered her recusal and order reassigning the case to Judge Hawley. Petitioner has not shown how or why the case was reassigned to Judge Hawley—it could have been by random draw, or because Judge Hawley was next in line on an assignment list maintained by the district court, or any number of other neutral processes which involved no exercise of discretion by the Chief Judge. Because Petitioner has established no facts concerning the reassignment process, this court cannot and should not speculate that Judge Hawley's assignment was the result of a deliberate choice by the Chief Judge. Without such speculation, this court cannot conclude that the reassignment process was improper.

---

[60] *See, e.g.*, *United States v. Williams*, 949 F.3d 1056, 1064-66 (7th Cir. 2020) (rejecting a similar argument that a district judge should have recused themselves *sua sponte* when there were facts showing that there was an appearance of impropriety in that particular judge presiding, rather than a mere suggestion that the assignment process was unfair).

3.      *This court should decline to issue Petitioner a certificate of appealability*

Finally, or perhaps preliminarily, this court should note that Petitioner has filed this appeal after the district court denied her a certificate of appealability.[61] Such a certificate is a prerequisite to this court hearing and evaluating her appeal.[62] While the Federal Rules of Appellate Procedure permit a habeas petitioner to request a certificate of appealability from this court, Petitioner has made no such request in this case.[63] Thus, this court is bound to consider, as a preliminary matter, whether to grant Petitioner a certificate of appealability under Federal Rule of Appellate Procedure 22(b)(2)'s mandate that "[i]f no express request for a certificate is filed, the notice of appeal constitutes a request addressed to the judges of the court of appeals."[64]

"A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right."[65] Here, Petitioner's meagre argument offers no basis for finding that she has been denied a constitutional right at all, much less the "substantial showing" required by the habeas statutes. Accordingly, Petitioner's implied request for a certificate of appealability should be denied and this court should dismiss her appeal.[66]

---

[61] Pet. App'x 7.

[62] 28 U.S.C. § 2253(c).

[63] Fed. R. App. P. 22(b)(1).

[64] Fed. R. App. P. 22(b)(2).

[65] 28 U.S.C. § 2253(c)(1).

[66] Respondent pauses here to note that, due to the irregularities in how Petitioner advanced her appeal, the process for defending such appeal is somewhat unclear under the Rules of Appellate Procedure. Respondent has elected to address its certificate of appealability defense within its merits brief given the fact that Petitioner filed her own merits brief well before it was appropriate to do so, and the Rules of Appellate Procedure provide the timeline for the Respondent to file their merits brief begins to run the moment the Petitioner files the opening brief. *See* Fed. R. App. P. 31(a)(1) ("The appellee must serve and file a brief within 30 days after the appellant's brief is served."). Given the absence of a motion for a certificate of appealability means the court takes up the issue on its own, per Rule 22(b)(2), Respondent was concerned the fact this issue had not been addressed would not constitute good cause for delay in the filing of its merits brief. As such, though Respondent understands certificate of appealability issues are generally handled in advance of merits briefing, Respondent felt compelled to act thusly by the running of its apparent deadline to file a merits response. Respondent apologizes for any inconvenience this unusual procedure may cause.

18

Respondent does not request oral argument in this case and does not believe oral argument will assist this court in deciding any of the issues presented for it.

## ADDENDUM OF STATUTES CITED

**28 U.S.C. § 455 (2026):**

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

(c) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

(1) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation;

(2) the degree of relationship is calculated according to the civil law system;

(3) "fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

(4) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except

that:

(i) Ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

(ii) An office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;

(iii) The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) Ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(e) No justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

(f) Notwithstanding the preceding provisions of this section, if any justice, judge, magistrate judge, or bankruptcy judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the justice, judge, magistrate judge, bankruptcy judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

## 28 U.S.C. § 1291 (2026):

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

## 28 U.S.C. § 1331 (2026):

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**28 U.S.C. § 2253 (2026):**

(a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--

> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

**28 U.S.C. § 2254 (2026):**

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--

> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

    (A) the claim relies on--

        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(f) If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination. If the applicant, because of indigency or other reason is unable to produce such part of the record, then the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official. If the State cannot provide such pertinent part of the record, then the court shall determine under the existing facts and circumstances what weight shall be given to the State court's factual determination.

(g) A copy of the official records of the State court, duly certified by the clerk of such court to be a true and correct copy of a finding, judicial opinion, or other reliable written indicia showing such a factual determination by the State court shall be admissible in the Federal court proceeding.

(h) Except as provided in section 408 of the Controlled Substances Act, in all proceedings brought under this section, and any subsequent proceedings on review, the court may appoint counsel for an applicant who is or becomes financially unable to afford counsel, except as provided by a rule promulgated by the Supreme Court pursuant to statutory authority. Appointment of counsel under this section shall be governed by section 3006A of title 18.

(i) The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.


**750 ILCS 60/102 (2026):**


Purposes; rules of construction. This Act shall be liberally construed and applied to promote its underlying purposes, which are to:

(1) Recognize domestic violence as a serious crime against the individual and society which produces family disharmony in thousands of Illinois families, promotes a pattern of escalating violence which frequently culminates in intra-family homicide, and creates an emotional atmosphere that is not conducive to healthy childhood development;

(2) Recognize domestic violence against high risk adults with disabilities, who are particularly vulnerable due to impairments in ability to seek or obtain protection, as a serious problem which

takes on many forms, including physical abuse, sexual abuse, neglect, and exploitation, and facilitate accessibility of remedies under the Act in order to provide immediate and effective assistance and protection.

(3) Recognize that the legal system has ineffectively dealt with family violence in the past, allowing abusers to escape effective prosecution or financial liability, and has not adequately acknowledged the criminal nature of domestic violence; that, although many laws have changed, in practice there is still widespread failure to appropriately protect and assist victims;

(4) Support the efforts of victims of domestic violence to avoid further abuse by promptly entering and diligently enforcing court orders which prohibit abuse and, when necessary, reduce the abuser's access to the victim and address any related issues of child custody and economic support, so that victims are not trapped in abusive situations by fear of retaliation, loss of a child, financial dependence, or loss of accessible housing or services;

(5) Clarify the responsibilities and support the efforts of law enforcement officers to provide immediate, effective assistance and protection for victims of domestic violence, recognizing that law enforcement officers often become the secondary victims of domestic violence, as evidenced by the high rates of police injuries and deaths that occur in response to domestic violence calls; and

(6) Expand the civil and criminal remedies for victims of domestic violence; including, when necessary, the remedies which effect physical separation of the parties to prevent further abuse.


**750 ILCS 60/214 (2026):**

Order of protection; remedies.

(a) Issuance of order. If the court finds that petitioner has been abused by a family or household member or that petitioner is a high-risk adult who has been abused, neglected, or exploited, as defined in this Act, an order of protection prohibiting the abuse, neglect, or exploitation shall issue; provided that petitioner must also satisfy the requirements of one of the following Sections, as appropriate: Section 217 on emergency orders, Section 218 on interim orders, or Section 219 on plenary orders. Petitioner shall not be denied an order of protection because petitioner or respondent is a minor. The court, when determining whether or not to issue an order of protection, shall not require physical manifestations of abuse on the person of the victim. Modification and extension of prior orders of protection shall be in accordance with this Act.

(b) Remedies and standards. The remedies to be included in an order of protection shall be determined in accordance with this Section and one of the following Sections, as appropriate: Section 217 on emergency orders, Section 218 on interim orders, and Section 219 on plenary orders. The remedies listed in this subsection shall be in addition to other civil or criminal remedies available to petitioner.

 (1) Prohibition of abuse, neglect, or exploitation. Prohibit respondent's harassment, interference with personal liberty, intimidation of a dependent, physical abuse, or willful deprivation, neglect or exploitation, as defined in this Act, or stalking of the petitioner, as defined in Section 12-7.3 of the Criminal Code of 2012, if such abuse, neglect, exploitation, or stalking has occurred or otherwise appears likely to occur if not prohibited.

 (2) Grant of exclusive possession of residence. Prohibit respondent from entering or remaining in any residence, household, or premises of the petitioner, including one owned or leased by respondent, if petitioner has a right to occupancy thereof. The grant of

exclusive possession of the residence, household, or premises shall not affect title to real property, nor shall the court be limited by the standard set forth in subsection (c-2) of Section 501 of the Illinois Marriage and Dissolution of Marriage Act.

(A) Right to occupancy. A party has a right to occupancy of a residence or household if it is solely or jointly owned or leased by that party, that party's spouse, a person with a legal duty to support that party or a minor child in that party's care, or by any person or entity other than the opposing party that authorizes that party's occupancy (e.g., a domestic violence shelter). Standards set forth in subparagraph (B) shall not preclude equitable relief.

(B) Presumption of hardships. If petitioner and respondent each has the right to occupancy of a residence or household, the court shall balance (i) the hardships to respondent and any minor child or dependent adult in respondent's care resulting from entry of this remedy with (ii) the hardships to petitioner and any minor child or dependent adult in petitioner's care resulting from continued exposure to the risk of abuse (should petitioner remain at the residence or household) or from loss of possession of the residence or household (should petitioner leave to avoid the risk of abuse). When determining the balance of hardships, the court shall also take into account the accessibility of the residence or household. Hardships need not be balanced if respondent does not have a right to occupancy.

The balance of hardships is presumed to favor possession by petitioner unless the presumption is rebutted by a preponderance of the evidence, showing that the hardships to respondent substantially outweigh the hardships to petitioner and any minor child or dependent adult in petitioner's care. The court, on the request of petitioner or on its own motion, may order respondent to provide suitable, accessible, alternate housing for petitioner instead of excluding respondent from a mutual residence or household.

(3) Stay away order and additional prohibitions. Order respondent to stay away from petitioner or any other person protected by the order of protection, or prohibit respondent from entering or remaining present at petitioner's school, place of employment, or other specified places at times when petitioner is present, or both, if reasonable, given the balance of hardships. Hardships need not be balanced for the court to enter a stay away order or prohibit entry if respondent has no right to enter the premises.

(A) If an order of protection grants petitioner exclusive possession of the residence, or prohibits respondent from entering the residence, or orders respondent to stay away from petitioner or other protected persons, then the court may allow respondent access to the residence to remove items of clothing and personal adornment used exclusively by respondent, medications, and other items as the court directs. The right to access shall be exercised on only one occasion as the court directs and in the presence of an agreed-upon adult third party or law enforcement officer.

(B) When the petitioner and the respondent attend the same public, private, or non-public elementary, middle, or high school, the court when issuing an order of protection and providing relief shall consider the severity of the act, any continuing physical danger or emotional distress to the petitioner, the educational rights guaranteed to the petitioner and respondent under federal and State law, the availability of a transfer of the respondent to another school, a change of placement or a change of program of the respondent, the expense, difficulty, and educational

disruption that would be caused by a transfer of the respondent to another school, and any other relevant facts of the case. The court may order that the respondent not attend the public, private, or non-public elementary, middle, or high school attended by the petitioner, order that the respondent accept a change of placement or change of program, as determined by the school district or private or non-public school, or place restrictions on the respondent's movements within the school attended by the petitioner. The respondent bears the burden of proving by a preponderance of the evidence that a transfer, change of placement, or change of program of the respondent is not available. The respondent also bears the burden of production with respect to the expense, difficulty, and educational disruption that would be caused by a transfer of the respondent to another school. A transfer, change of placement, or change of program is not unavailable to the respondent solely on the ground that the respondent does not agree with the school district's or private or non-public school's transfer, change of placement, or change of program or solely on the ground that the respondent fails or refuses to consent or otherwise does not take an action required to effectuate a transfer, change of placement, or change of program. When a court orders a respondent to stay away from the public, private, or non-public school attended by the petitioner and the respondent requests a transfer to another attendance center within the respondent's school district or private or non-public school, the school district or private or non-public school shall have sole discretion to determine the attendance center to which the respondent is transferred. In the event the court order results in a transfer of the minor respondent to another attendance center, a change in the respondent's placement, or a change of the respondent's program, the parents, guardian, or legal custodian of the respondent is responsible for transportation and other costs associated with the transfer or change.

(C) The court may order the parents, guardian, or legal custodian of a minor respondent to take certain actions or to refrain from taking certain actions to ensure that the respondent complies with the order. In the event the court orders a transfer of the respondent to another school, the parents, guardian, or legal custodian of the respondent is responsible for transportation and other costs associated with the change of school by the respondent.

(4) Counseling. Require or recommend the respondent to undergo counseling for a specified duration with a social worker, psychologist, clinical psychologist, psychiatrist, family service agency, alcohol or substance abuse program, mental health center guidance counselor, agency providing services to elders, program designed for domestic violence abusers or any other guidance service the court deems appropriate. The Court may order the respondent in any intimate partner relationship to report to an Illinois Department of Human Services protocol approved partner abuse intervention program for an assessment and to follow all recommended treatment.

(5) Physical care and possession of the minor child. In order to protect the minor child from abuse, neglect, or unwarranted separation from the person who has been the minor child's primary caretaker, or to otherwise protect the well-being of the minor child, the court may do either or both of the following: (i) grant petitioner physical care or possession of the minor child, or both, or (ii) order respondent to return a minor child to, or not remove a minor child from, the physical care of a parent or person in loco parentis.

If a court finds, after a hearing, that respondent has committed abuse (as defined in Section 103) of a minor child, there shall be a rebuttable presumption that awarding physical care to respondent would not be in the minor child's best interest.

(6) Temporary allocation of parental responsibilities: significant decision-making. Award temporary decision-making responsibility to petitioner in accordance with this Section, the Illinois Marriage and Dissolution of Marriage Act, the Illinois Parentage Act of 2015, and this State's Uniform Child-Custody Jurisdiction and Enforcement Act.

If a court finds, after a hearing, that respondent has committed abuse (as defined in Section 103) of a minor child, there shall be a rebuttable presumption that awarding temporary significant decision-making responsibility to respondent would not be in the child's best interest.

(7) Parenting time. Determine the parenting time, if any, of respondent in any case in which the court awards physical care or allocates temporary significant decision-making responsibility of a minor child to petitioner. The court shall restrict or deny respondent's parenting time with a minor child if the court finds that respondent has done or is likely to do any of the following: (i) abuse or endanger the minor child during parenting time; (ii) use the parenting time as an opportunity to abuse or harass petitioner or petitioner's family or household members; (iii) improperly conceal or detain the minor child; or (iv) otherwise act in a manner that is not in the best interests of the minor child. The court shall not be limited by the standards set forth in Section 603.10 of the Illinois Marriage and Dissolution of Marriage Act. If the court grants parenting time, the order shall specify dates and times for the parenting time to take place or other specific parameters or conditions that are appropriate. No order for parenting time shall refer merely to the term "reasonable parenting time".

Petitioner may deny respondent access to the minor child if, when respondent arrives for parenting time, respondent is under the influence of drugs or alcohol and constitutes a threat to the safety and well-being of petitioner or petitioner's minor children or is behaving in a violent or abusive manner.

If necessary to protect any member of petitioner's family or household from future abuse, respondent shall be prohibited from coming to petitioner's residence to meet the minor child for parenting time, and the parties shall submit to the court their recommendations for reasonable alternative arrangements for parenting time. A person may be approved to supervise parenting time only after filing an affidavit accepting that responsibility and acknowledging accountability to the court.

(8) Removal or concealment of minor child. Prohibit respondent from removing a minor child from the State or concealing the child within the State.

(9) Order to appear. Order the respondent to appear in court, alone or with a minor child, to prevent abuse, neglect, removal or concealment of the child, to return the child to the custody or care of the petitioner or to permit any court-ordered interview or examination of the child or the respondent.

(10) Possession of personal property. Grant petitioner exclusive possession of personal property and, if respondent has possession or control, direct respondent to promptly make it available to petitioner, if:

 (i) petitioner, but not respondent, owns the property; or

 (ii) the parties own the property jointly; sharing it would risk abuse of petitioner by respondent or is impracticable; and the balance of hardships favors temporary

26

possession by petitioner.

If petitioner's sole claim to ownership of the property is that it is marital property, the court may award petitioner temporary possession thereof under the standards of subparagraph (ii) of this paragraph only if a proper proceeding has been filed under the Illinois Marriage and Dissolution of Marriage Act, as now or hereafter amended.

No order under this provision shall affect title to property.

(11) Protection of property. Forbid the respondent from taking, transferring, encumbering, concealing, damaging or otherwise disposing of any real or personal property, except as explicitly authorized by the court, if:

　　(i) petitioner, but not respondent, owns the property; or

　　(ii) the parties own the property jointly, and the balance of hardships favors granting this remedy.

If petitioner's sole claim to ownership of the property is that it is marital property, the court may grant petitioner relief under subparagraph (ii) of this paragraph only if a proper proceeding has been filed under the Illinois Marriage and Dissolution of Marriage Act, as now or hereafter amended.

The court may further prohibit respondent from improperly using the financial or other resources of an aged member of the family or household for the profit or advantage of respondent or of any other person.

(11.5) Protection of animals. Grant the petitioner the exclusive care, custody, or control of any animal owned, possessed, leased, kept, or held by either the petitioner or the respondent or a minor child residing in the residence or household of either the petitioner or the respondent and order the respondent to stay away from the animal and forbid the respondent from taking, transferring, encumbering, concealing, harming, or otherwise disposing of the animal.

(12) Order for payment of support. Order respondent to pay temporary support for the petitioner or any child in the petitioner's care or over whom the petitioner has been allocated parental responsibility, when the respondent has a legal obligation to support that person, in accordance with the Illinois Marriage and Dissolution of Marriage Act, which shall govern, among other matters, the amount of support, payment through the clerk and withholding of income to secure payment. An order for child support may be granted to a petitioner with lawful physical care of a child, or an order or agreement for physical care of a child, prior to entry of an order allocating significant decision-making responsibility. Such a support order shall expire upon entry of a valid order allocating parental responsibility differently and vacating the petitioner's significant decision-making authority, unless otherwise provided in the order.

(13) Order for payment of losses. Order respondent to pay petitioner for losses suffered as a direct result of the abuse, neglect, or exploitation. Such losses shall include, but not be limited to, medical expenses, lost earnings or other support, repair or replacement of property damaged or taken, reasonable attorney's fees, court costs and moving or other travel expenses, including additional reasonable expenses for temporary shelter and restaurant meals.

　　(i) Losses affecting family needs. If a party is entitled to seek maintenance, child support or property distribution from the other party under the Illinois Marriage and Dissolution of Marriage Act, as now or hereafter amended, the court may order respondent to reimburse petitioner's actual losses, to the extent that such

reimbursement would be "appropriate temporary relief", as authorized by subsection (a)(3) of Section 501 of that Act.

(ii) Recovery of expenses. In the case of an improper concealment or removal of a minor child, the court may order respondent to pay the reasonable expenses incurred or to be incurred in the search for and recovery of the minor child, including but not limited to legal fees, court costs, private investigator fees, and travel costs.

(14) Prohibition of entry. Prohibit the respondent from entering or remaining in the residence or household while the respondent is under the influence of alcohol or drugs and constitutes a threat to the safety and well-being of the petitioner or the petitioner's children.

(14.5) Prohibition of possession of firearms and firearm parts; search and seizure of firearms and firearms parts.

(A)(i) Prohibit a respondent against whom an emergency, interim, or plenary order of protection was issued from possessing, during the duration of the order, any firearms or firearm parts that could be assembled into an operable firearm if a search warrant is issued under (A-1) or the order:

(aa) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate, or the petitioner has satisfied the requirements of Section 217;

(bb) restrains such person from using physical force; harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person; or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(cc) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child.

(ii) The court shall order any respondent prohibited from possessing firearms under item (i) of subparagraph (A) to surrender any firearms or firearm parts that could be assembled to make an operable firearm. Any firearms or firearm parts on the respondent's person or at the place of service shall be surrendered to the serving officers at the time of service of the order of protection, and any other firearms or firearm parts shall be surrendered to local law enforcement within 24 hours of service of the order of protection. Any Firearm Owner's Identification Card or Concealed Carry License in the possession of the respondent, except as provided in subparagraph (B), shall also be ordered by the court to be turned over to the officer serving the order of protection at the time of service or, if not on the respondent's person or at the location where the respondent is served at the time of service, to local law enforcement within 24 hours of service of the order of protection. The law enforcement agency shall immediately mail the card, as well as any license, to the Illinois State Police Firearm Owner's Identification Card Office for safekeeping.

(A-1)(i) Upon issuance of an emergency, interim, or plenary order of protection and subject to the provisions of item (ii) of this subparagraph (A-1), the court shall issue a search warrant for the seizure of any firearms or firearm parts that could be assembled to make an operable firearm belonging to the respondent if the court, based upon sworn testimony, finds that:

(aa) the respondent poses a credible threat to the physical safety of the petitioner protected by the order of protection; and

28

(bb) probable cause exists to believe that:

(I) the respondent possesses firearms or firearm parts that could be assembled to make an operable firearm;

(II) the firearms or firearm parts that could be assembled to make an operable firearm are located at the residence, vehicle, or other property of the respondent to be searched; and

(III) the credible threat to the physical safety of the petitioner protected by the order of protection is immediate and present.

The record shall reflect the court's findings in determining whether the search warrant shall be issued.

(ii) If the petitioner does not seek a warrant under this subparagraph (A-1) or the court determines that the requirements of this subparagraph (A-1) have not been met, relief under subparagraph (A) alone may be granted.

(iii) An ex parte search warrant shall be granted under this subparagraph (A-1) only if the court finds that:

(aa) the elements of item (i) of subparagraph (A-1) have been met;

(bb) personal injury to the petitioner is likely to occur if the respondent received prior notice; and

(cc) the petitioner has otherwise satisfied the requirements of Section 217 of this Act.

(iv) Oral testimony is sufficient in lieu of an affidavit to support a finding of probable cause.

(v) A search warrant issued under this subparagraph (A-1) shall be directed by the court for enforcement to the law enforcement agency with primary responsibility for responding to calls for service at the location to be searched or to another appropriate law enforcement agency if justified by the circumstances. The search warrant shall specify with particularity the scope of the search, including the property to be searched, and shall direct the law enforcement agency to seize the respondent's firearms and firearm parts that could be assembled to make an operable firearm. Law enforcement shall also be directed to seize any Firearm Owner's Identification Card and any Concealed Carry License belonging to the respondent.

(vi) The petitioner shall prepare an information sheet, reviewed by the court, for law enforcement at the time the warrant is granted. The information sheet shall include:

(aa) contact information for the petitioner, the petitioner's attorney, or both, including a telephone number and email, if available;

(bb) a physical description of the respondent, including the respondent's date of birth, if known, or approximate age, height, weight, race, and hair color;

(cc) days and times that the respondent is likely to be at the property to be searched, if known; and

(dd) whether people other than the respondent are likely to be present at the property to be searched and when, if known.

(vii) The information sheet shall be transmitted to the law enforcement agency to which the search warrant is directed in the same manner as the warrant is

transmitted under Section 222 of this Act.

(viii) If the court, after determining a search warrant should issue, finds that the petitioner has made a credible report of domestic violence to the local law enforcement agency within the previous 90 days, law enforcement shall execute the warrant no later than 96 hours after receipt of the warrant. If the court finds that petitioner has not made such a report, the law enforcement agency to which the court has directed the warrant shall, within 48 hours of receipt, evaluate the warrant and seek any corrections to the warrant, and, if applicable, add to or negate the warrant. The record shall reflect the court's findings in determining whether to correct, add, or negate the warrant. If a change is made regarding the search warrant, law enforcement shall execute the warrant no later than 96 hours after the correction is issued. The law enforcement agency shall notify the petitioner of any changes to the warrant or if the warrant has been negated. The law enforcement agency to which the court has directed the warrant may coordinate with other law enforcement agencies to execute the warrant. A return of the warrant shall be filed by the law enforcement agency within 24 hours of execution, setting forth the time, date, and location where the warrant was executed and what items, if any, were seized. If the court is not in session, the return information shall be returned on the next date the court is in session. Subject to the provisions of this Section, peace officers shall have the same authority to execute a warrant issued pursuant to this subsection as a warrant issued under Article 108 of the Code of Criminal Procedure of 1963.

(ix) Upon discovering a defect in the search warrant, the appropriate law enforcement agency may petition the court to correct the warrant. The law enforcement agency shall notify the petitioner of any such correction.

(x) Upon petition by the appropriate law enforcement agency, the court may modify the search warrant or extend the time to execute the search warrant for a period of no more than 96 hours. In determining whether to modify or extend the warrant, the court shall consider:

(aa) any increased risk to the petitioner's safety that may result from a modification or extension of the warrant;

(bb) any unnecessary risk to law enforcement that would be mitigated by a modification or extension of the warrant;

(cc) any risks to third parties at the location to be searched that would be mitigated by a modification or extension of the warrant; and

(dd) the likelihood of successful execution of warrant.

The record shall reflect the court's findings in determining whether to extend or modify the warrant. The law enforcement agency shall notify the petitioner of any modification or extension of the warrant.

(xi) Service of any order of protection shall, to the extent possible, be concurrent with the execution of any search warrant under this paragraph.

(B) If the respondent is a peace officer as defined in Section 2-13 of the Criminal Code of 2012, the court shall order that any firearms used by the respondent in the performance of his or her duties as a peace officer be surrendered to the chief law enforcement executive of the agency in which the respondent is employed, who shall retain the firearms for safekeeping for the duration of the order of protection.

(C)(i) Any firearms or firearm parts that could be assembled to make an operable firearm shall be kept by the law enforcement agency that took possession of the items for safekeeping, except as provided in subparagraph (B). The period of safekeeping shall be for the duration of the order of protection. Except as provided in subparagraph (E), the respondent is prohibited from transferring firearms or firearm parts to another individual in lieu of surrender to law enforcement. The law enforcement agency shall provide an itemized statement of receipt to the respondent and the court describing any seized or surrendered firearms or firearm parts and informing the respondent that the respondent may seek the return of the respondent's items at the end of the order of protection. The law enforcement agency may enter arrangements, as needed, with federally licensed firearm dealers or other law enforcement agencies for the storage of any firearms seized or surrendered under this subsection.

(ii) It is the respondent's responsibility to request the return or reinstatement of any Firearm Owner's Identification Card or Concealed Carry License and notify the Illinois State Police Firearm Owner's Identification Card Office at the end of the Order of Protection.

(iii) At the end of the order of protection, a respondent may request the return of any seized or surrendered firearms or firearm parts that could be assembled to make an operable firearm. Such firearms or firearm parts shall be returned within 14 days of the request to the respondent, if the respondent is lawfully eligible to possess firearms, or to a designated third party who is lawfully eligible to possess firearms. If the firearms or firearm parts cannot be returned to respondent because (1) the respondent has not requested the return or transfer of the firearms or firearm parts as set forth in this subparagraph, and (2) the respondent cannot be located or fails to respond to more than 3 requests to retrieve the firearms or firearm parts the court may, or is not lawfully eligible to possess a firearm, upon petition from the appropriate law enforcement agency and notice to the respondent at the respondent's last known address, order the law enforcement agency to destroy the firearms or firearm parts; use the firearms or firearm parts for training purposes or for any other application as deemed appropriate by the law enforcement agency; or turn over the firearm or firearm parts to a third party who is lawfully eligible to possess firearms, and who does not reside with respondent.

(D)(i) If a person other than the respondent claims title to any firearms and firearm parts that could be assembled to make an operable firearm seized or surrendered under this subsection, the person may petition the court to have the firearm and firearm parts that could be assembled to make an operable firearm returned to him or her with proper notice to the petitioner and respondent. If, at a hearing on the petition, the court determines the person to be the lawful owner of the firearm and firearm parts that could be assembled to make an operable firearm, the firearm and firearm parts that could be assembled to make an operable firearm shall be returned to the person, provided that:

> (aa) the firearm and firearm parts that could be assembled to make an operable firearm are removed from the respondent's custody, control, or possession and the lawful owner agrees to store the firearm and firearm parts that could be assembled to make an operable firearm in a manner such

that the respondent does not have access to or control of the firearm and firearm parts that could be assembled to make an operable firearm; and

(bb) the firearm and firearm parts that could be assembled to make an operable firearm are not otherwise unlawfully possessed by the owner.

(ii) The person petitioning for the return of his or her firearm and firearm parts that could be assembled to make an operable firearm must swear or affirm by affidavit that he or she:

(aa) is the lawful owner of the firearm and firearm parts that could be assembled to make an operable firearm;

(bb) shall not transfer the firearm and firearm parts that could be assembled to make an operable firearm to the respondent; and

(cc) will store the firearm and firearm parts that could be assembled to make an operable firearm in a manner that the respondent does not have access to or control of the firearm and firearm parts that could be assembled to make an operable firearm.

(E)(i) The respondent may file a motion to transfer, at the next scheduled hearing, any seized or surrendered firearms or firearm parts to a third party. Notice of the motion shall be provided to the petitioner and the third party must appear at the hearing.

(ii) The court may order transfer of the seized or surrendered firearm or firearm parts only if:

(aa) the third party transferee affirms by affidavit to the open court that:

(I) the third party transferee does not reside with the respondent;

(II) the respondent does not have access to the location in which the third party transferee intends to keep the firearms or firearm parts;

(III) the third party transferee will not transfer the firearm or firearm parts to the respondent or anyone who resides with the respondent;

(IV) the third party transferee will maintain control and possession of the firearm or firearm parts until otherwise ordered by the court; and

(V) the third party transferee will be subject to criminal penalties for transferring the firearms or firearm parts to the respondent; and

(bb) the court finds that:

(I) the respondent holds a valid Firearm Owner's Identification; and

(II) the transfer of firearms or firearm parts to the third party transferee does not place the petitioner or any other protected parties at any additional threat or risk of harm.

(15) Prohibition of access to records. If an order of protection prohibits respondent from having contact with the minor child, or if petitioner's address is omitted under subsection (b) of Section 203, or if necessary to prevent abuse or wrongful removal or concealment of a minor child, the order shall deny respondent access to, and prohibit respondent from inspecting, obtaining, or attempting to inspect or obtain, school or any other records of the minor child who is in the care of petitioner.

(16) Order for payment of shelter services. Order respondent to reimburse a shelter providing temporary housing and counseling services to the petitioner for the cost of the services, as certified by the shelter and deemed reasonable by the court.

(17) Order for injunctive relief. Enter injunctive relief necessary or appropriate to prevent further abuse of a family or household member or further abuse, neglect, or exploitation of a high-risk adult with disabilities or to effectuate one of the granted remedies, if supported by the balance of hardships. If the harm to be prevented by the injunction is abuse or any other harm that one of the remedies listed in paragraphs (1) through (16) of this subsection is designed to prevent, no further evidence is necessary that the harm is an irreparable injury.

(18) Telephone services.

    (A) Unless a condition described in subparagraph (B) of this paragraph exists, the court may, upon request by the petitioner, order a wireless telephone service provider to transfer to the petitioner the right to continue to use a telephone number or numbers indicated by the petitioner and the financial responsibility associated with the number or numbers, as set forth in subparagraph (C) of this paragraph. For purposes of this paragraph (18), the term "wireless telephone service provider" means a provider of commercial mobile service as defined in 47 U.S.C. 332. The petitioner may request the transfer of each telephone number that the petitioner, or a minor child in his or her custody, uses. The clerk of the court shall serve the order on the wireless telephone service provider's agent for service of process provided to the Illinois Commerce Commission. The order shall contain all of the following:

        (i) The name and billing telephone number of the account holder including the name of the wireless telephone service provider that serves the account.

        (ii) Each telephone number that will be transferred.

        (iii) A statement that the provider transfers to the petitioner all financial responsibility for and right to the use of any telephone number transferred under this paragraph.

    (B) A wireless telephone service provider shall terminate the respondent's use of, and shall transfer to the petitioner use of, the telephone number or numbers indicated in subparagraph (A) of this paragraph unless it notifies the petitioner, within 72 hours after it receives the order, that one of the following applies:

        (i) The account holder named in the order has terminated the account.

        (ii) A difference in network technology would prevent or impair the functionality of a device on a network if the transfer occurs.

        (iii) The transfer would cause a geographic or other limitation on network or service provision to the petitioner.

        (iv) Another technological or operational issue would prevent or impair the use of the telephone number if the transfer occurs.

    (C) The petitioner assumes all financial responsibility for and right to the use of any telephone number transferred under this paragraph. In this paragraph, "financial responsibility" includes monthly service costs and costs associated with any mobile device associated with the number.

    (D) A wireless telephone service provider may apply to the petitioner its routine and customary requirements for establishing an account or transferring a number, including requiring the petitioner to provide proof of identification, financial information, and customer preferences.

    (E) Except for willful or wanton misconduct, a wireless telephone service provider is immune from civil liability for its actions taken in compliance with a court order

issued under this paragraph.

(F) All wireless service providers that provide services to residential customers shall provide to the Illinois Commerce Commission the name and address of an agent for service of orders entered under this paragraph (18). Any change in status of the registered agent must be reported to the Illinois Commerce Commission within 30 days of such change.

(G) The Illinois Commerce Commission shall maintain the list of registered agents for service for each wireless telephone service provider on the Commission's website. The Commission may consult with wireless telephone service providers and the Circuit Court Clerks on the manner in which this information is provided and displayed.

(c) Relevant factors; findings.

(1) In determining whether to grant a specific remedy, other than payment of support, the court shall consider relevant factors, including but not limited to the following:

(i) the nature, frequency, severity, pattern and consequences of the respondent's past abuse, neglect or exploitation of the petitioner or any family or household member, including the concealment of his or her location in order to evade service of process or notice, and the likelihood of danger of future abuse, neglect, or exploitation to petitioner or any member of petitioner's or respondent's family or household; and

(ii) the danger that any minor child will be abused or neglected or improperly relocated from the jurisdiction, improperly concealed within the State or improperly separated from the child's primary caretaker.

(2) In comparing relative hardships resulting to the parties from loss of possession of the family home, the court shall consider relevant factors, including but not limited to the following:

(i) availability, accessibility, cost, safety, adequacy, location and other characteristics of alternate housing for each party and any minor child or dependent adult in the party's care;

(ii) the effect on the party's employment; and

(iii) the effect on the relationship of the party, and any minor child or dependent adult in the party's care, to family, school, church and community.

(3) Subject to the exceptions set forth in paragraph (4) of this subsection, the court shall make its findings in an official record or in writing, and shall at a minimum set forth the following:

(i) That the court has considered the applicable relevant factors described in paragraphs (1) and (2) of this subsection.

(ii) Whether the conduct or actions of respondent, unless prohibited, will likely cause irreparable harm or continued abuse.

(iii) Whether it is necessary to grant the requested relief in order to protect petitioner or other alleged abused persons.

(4) For purposes of issuing an ex parte emergency order of protection, the court, as an alternative to or as a supplement to making the findings described in paragraphs (c)(3)(i) through (c)(3)(iii) of this subsection, may use the following procedure:

When a verified petition for an emergency order of protection in accordance with the requirements of Sections 203 and 217 is presented to the court, the court shall examine

petitioner on oath or affirmation. An emergency order of protection shall be issued by the court if it appears from the contents of the petition and the examination of petitioner that the averments are sufficient to indicate abuse by respondent and to support the granting of relief under the issuance of the emergency order of protection.

(5) Never married parties. No rights or responsibilities for a minor child born outside of marriage attach to a putative father until a father and child relationship has been established under the Illinois Parentage Act of 1984, the Illinois Parentage Act of 2015, the Illinois Public Aid Code, Section 12 of the Vital Records Act, the Juvenile Court Act of 1987, the Probate Act of 1975, the Revised Uniform Reciprocal Enforcement of Support Act, the Uniform Interstate Family Support Act, the Expedited Child Support Act of 1990, any judicial, administrative, or other act of another state or territory, any other Illinois statute, or by any foreign nation establishing the father and child relationship, any other proceeding substantially in conformity with the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Pub. L. 104-193), or where both parties appeared in open court or at an administrative hearing acknowledging under oath or admitting by affirmation the existence of a father and child relationship. Absent such an adjudication, finding, or acknowledgment, no putative father shall be granted temporary allocation of parental responsibilities, including parenting time with the minor child, or physical care and possession of the minor child, nor shall an order of payment for support of the minor child be entered.

(d) Balance of hardships; findings. If the court finds that the balance of hardships does not support the granting of a remedy governed by paragraph (2), (3), (10), (11), or (16) of subsection (b) of this Section, which may require such balancing, the court's findings shall so indicate and shall include a finding as to whether granting the remedy will result in hardship to respondent that would substantially outweigh the hardship to petitioner from denial of the remedy. The findings shall be an official record or in writing.

(e) Denial of remedies. Denial of any remedy shall not be based, in whole or in part, on evidence that:

(1) Respondent has cause for any use of force, unless that cause satisfies the standards for justifiable use of force provided by Article 7 of the Criminal Code of 2012;

(2) Respondent was voluntarily intoxicated;

(3) Petitioner acted in self-defense or defense of another, provided that, if petitioner utilized force, such force was justifiable under Article 7 of the Criminal Code of 2012;

(4) Petitioner did not act in self-defense or defense of another;

(5) Petitioner left the residence or household to avoid further abuse, neglect, or exploitation by respondent;

(6) Petitioner did not leave the residence or household to avoid further abuse, neglect, or exploitation by respondent;

(7) Conduct by any family or household member excused the abuse, neglect, or exploitation by respondent, unless that same conduct would have excused such abuse, neglect, or exploitation if the parties had not been family or household members.

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on January 13, 2026, I filed the foregoing Respondent-Appellee's Brief with the clerk of court using the CM/ECF system. In light of Petitioner electing to become a CM/ECF user for the purposes of this case, the CM/ECF system effected electronic service of this document on Petitioner at that time. *See* Fed. R. App. P. 25(c)(2). Additionally, in compliance with Federal Rule of Appellate Procedure 31(b) and Circuit Rule 31(b), on or before January 14, 2026, I sent ten physical copies of the foregoing Respondent-Appellee's Brief to the clerk of court at the following address:

Office of the Clerk
United States Court of Appeals for the Seventh Circuit
Everett McKinley Dirksen United States Courthouse
219 S. Dearborn Street
Room 2722
Chicago, IL 60604

I further sent two physical copies of the foregoing Respondent-Appellee's Brief, on or before January 14, 2026, to Petitioner at the following address:

Aimee Albrecht
200 W Spring Grove Ave.
Alexis, IL 61412

Respectfully submitted, January 13, 2026,

By: s/ Austin Carlson
Austin Carlson
IL #6341256
IA #AT0014755
Assistant State's Attorney
Attorney for Respondent-Appellee
State's Attorney's Office
1317 3rd Ave. – 2nd Floor
Rock Island, IL 61201
Phone: (309) 558-3219
Fax: (309) 786-5052
Email: carlsona@rockislandcountyil.gov